J-S34010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :           PENNSYLVANIA
                               :
              v.               :
                               :
                               :
JOEL WESLEY VARNER             :
                               :
          Appellant            :   No. 271 WDA 2022

Appeal from the Judgment of Sentence Entered January 21, 2022
In the Court of Common Pleas of Indiana County Criminal Division at
No(s):  CP-32-CR-0000665-2020

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: OCTOBER 24, 2022**

Appellant, Joel Wesley Varner, appeals from the January 21, 2022 Judgment of Sentence entered in the Indiana County Court of Common Pleas following his non-jury trial conviction of one count each of DUI: General Impairment, DUI: Highest Rate of Alcohol, Disregarding Traffic Lane, and Careless Driving.[1]  Appellant challenges the trial court's denial of his pretrial motion to suppress.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On December 28, 2019, Dominick Reed called the Pennsylvania State Police ("PSP"), identified himself,[2] and reported the erratic driving of an older-model, square-

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(a)(1), 3802(c), 3309(1), and 3714(a), respectively.

[2] In addition, Mr. Reed provided the dispatcher with his then-current phone number and home address.

body, white, lifted, Ford pick-up truck with marker lights and white vinyl decals on the rear windshield. Mr. Reed described the truck as swerving all over the road, travelling at various speeds, and stopping in the middle of the roadway at various times. Mr. Reed indicated that he had last seen the truck in the vicinity of Claghorn and Longs Roads in Brush Valley Township.

In response to the erratic driving report, the PSP dispatched Trooper Eric Smith to Longs Road. About 10 minutes later, Trooper Smith observed a truck matching the description provided by Mr. Reed in the vicinity, on Claghorn Road. Trooper Smith effectuated a traffic stop following which he determined that Appellant was driving the truck while intoxicated. As a result, the Commonwealth charged Appellant with the above crimes.

On March 8, 2021, Appellant filed an Omnibus Pretrial Motion to Suppress Evidence contending that the traffic stop that led to his arrest was illegal. In particular, Appellant asserted that "Trooper Smith lacked the requisite probable cause and/or reasonable suspicion to conduct a lawful seizure of [Appellant's] vehicle which was otherwise legally on the roadway at the time of the stop." Motion to Suppress, 3/8/21, at 2.

On April 21, 2021, the trial court held a hearing on Appellant's motion to suppress at which Dominic Reed, Jeffrey Johnson, a private investigator retained by Appellant, and Trooper Smith testified to the above facts. Trooper Smith also described the place on Claghorn Road where he met Appellant as

"dirt, gravel, very tight, and there's a switchback in the middle."[3]  He explained that, because the road is so narrow, as he approached Appellant, Appellant's vehicle was "head-on" with his and both vehicles stopped in the middle of the roadway.  Appellant then backed up into the brush so that Trooper Smith's vehicle could pass him.  Trooper Smith testified that he thought the truck's driver's "response to reacting to another vehicle in the roadway" seemed "slow[.]"[4]  Trooper Smith explained next that the truck's passenger rolled down his window and waved Trooper Smith by.  Trooper Smith then stopped the vehicle to investigate further.  He testified that, as he approached Appellant's vehicle, he "detected a strong odor of an alcoholic beverage" and Appellant "reported that he was coming home after having a couple [of] drinks at the bar."[5]  Trooper Smith further testified that he did not observe Appellant driving erratically or violating the Motor Vehicle Code.  He testified however, that when he received the dispatch reporting Appellant's erratic driving, based on his experience and training his immediate thoughts and concerns were that Appellant was impaired and that he posed a risk to the safety of other motorists on the road.

Mr. Reed testified that when he first came upon Appellant on the night in question, he was travelling west on Route 22 towards Armagh.  Mr. Reed

---

[3] N.T. Suppression, 4/21/21, at 12.

[4] *Id.*

[5] *Id.* at 14.

testified that Appellant "pulled out and went across the median . . . driving erratically and swerving all over the road."[6]  He explained that, as he attempted to pass Appellant's truck, the occupants "started throwing garbage and stuff out of [] the truck."[7]  He testified that after he passed Appellant, Appellant followed him, so Mr. Reed pulled over and then Appellant stopped "door to door with me.  I went to go and it was kind of back and forth and then I did a circle and parked back where I was. . . . At that point the truck stopped in the middle of the road, put it in reverse and drove backwards towards me.  I had to go in the opposing lane to go around the vehicle"[8]  Mr. Reed testified that it was then that he called the PSP.  He continued to follow Appellant's truck while on the phone with the police.  He testified that Appellant "was driving at a high rate of speed and driving in the opposing lane" before turning onto Claghorn Road.[9]

Mr. Reed testified that he no longer lived at the address he provided to the police dispatcher on the night of Appellant's arrest, which was his mother's house.  He also testified that his phone number has changed since the incident.  He confirmed that he was not trying to evade contact from the PSP, but had merely relocated and not updated his information with the PSP.  Mr.

---

[6] *Id.* at 25.

[7] *Id.*

[8] *Id.* at 25-26

[9] *Id.* at 26.

Reed further testified that, contrary to the information provided to Trooper Smith by the police dispatcher, Mr. Reed did not see Appellant operate his truck on Longs Road. He explained that he had mentioned Longs Road to the police dispatcher in the context of his report that Appellant's vehicle approached the four-way intersection of Route 56, Claghorn Road, and Longs Road and that the truck "turned onto Claghorn Road from where Longs Road meets [Route] 56, and then when you cross, it turns to Claghorn because Claghorn connects to [Route] 259 as well."[10] Mr. Reed testified that he observed Appellant driving erratically for a period of 10 to 15 minutes.

In his testimony, Mr. Johnson, Appellant's private investigator, provided a detailed description of the nature and conditions of Longs Road. He also testified that he was unable to confirm from Mr. Reed's "Comprehensive Persons Report" that Mr. Reed had ever lived at the address Mr. Reed provided to the PSP dispatcher.[11] He further testified that it is possible for Mr. Reed to have lived at that address without it appearing on the Comprehensive Persons Report.

_____

[10] *Id.* at 33. *See also id.* at 32 (where Mr. Reed explains that "there is a four-way intersection . . . There's 56 and a road comes from your right and stops at 56. That's Longs Road. Whenever you cross 56, it turns into Claghorn").

[11] Mr. Johnson explained that a Comprehensive Persons Report is a "personal biographical record . . . that shows address history, associates, criminal records, any bankruptcies . . . any kind of licenses, sometimes a work history." *Id.* at 42.

On August 9, 2021, the trial court denied Appellant's motion to suppress. The court found that Trooper Smith's contact with Appellant constituted an investigative motor vehicle stop that required reasonable suspicion that Appellant was driving under the influence. Order, 8/9/21, at ¶¶ 1-2. The court further found Mr. Reed's testimony as set forth above credible. *Id.* at ¶ 3. The court, thus, concluded that "Trooper Smith possessed specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted" the investigative motor vehicle stop. *Id.* at ¶ 4 (citations omitted).

The case proceeded to a bench trial where, on October 25, 2021, the court convicted Appellant of the above crimes. On January 21, 2022, the trial court sentenced Appellant to a term of 3 days to 6 months of incarceration in county jail and a consecutive term of 6 months' probation. Appellant did not file a post-sentence motion.

This appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement. The trial court filed a statement in lieu of a Rule 1925(a) opinion referring this Court to its August 9, 2021 opinion.

Appellant raises the following issue on appeal:

Did the [t]rial [c]ourt err in denying [Appellant's] Omnibus Pretrial Motion to Suppress [Evidence] by determining that reasonable suspicion justified the seizure of Appellant?

Appellant's Brief at 6.

Appellant challenges the suppression court's determination that the traffic stop conducted by Trooper Smith was lawful. Appellant asserts that for

the stop to be lawful, Trooper Smith needed either reasonable suspicion that Appellant was operating his vehicle while under the influence or probable cause that Appellant had committed a moving violation of the Motor Vehicle Code. He argues that: (1) Mr. Reed's report to the PSP dispatcher lacked the necessary indicia of reliability to provide Trooper Smith with reasonable suspicion sufficient to justify the traffic stop of Appellant; and (2) Trooper Smith lacked probable cause to charge Appellant with moving violations of the Motor Vehicle Code.

**A.**

When we review the denial of a motion to suppress, "we are limited to considering only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1198 (Pa. Super. 2018) (*en banc*) (citation and internal quotation marks omitted). When the testimony and other evidence support the trial court's findings of fact, this Court is bound by them and we "may reverse only if the court erred in reaching its legal conclusions based upon the facts." ***Id.*** (citation omitted). "Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony." ***Commonwealth v. McCoy***, 154 A.3d 813, 816 (Pa. Super. 2017). This Court will not disturb a suppression court's credibility determination absent a clear and manifest

error. ***Commonwealth v. Camacho***, 625 A.2d 1242, 1245 (Pa. Super. 1993).

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." ***Commonwealth v. Neal***, 151 A.3d 1068, 1071 (Pa. Super. 2016). Importantly, "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-48 (Pa. 2012) (citing Pa.R.Crim.P. 581(H)).

**B.**

Appellant claims the suppression court erred as a matter of law in determining that Trooper Smith had the requisite reasonable suspicion to justify the traffic stop. Appellant's Brief at 20-26. He argues that Mr. Reed's report to police dispatch lacked the required specificity and credibility sufficient to justify Appellant's seizure. ***Id.*** In support of his argument, Appellant asserts that the PSP received "only somewhat vague information of alleged swerving and stopping" from Mr. Reed and, "Trooper Smith never corroborated [Mr. Reed's] information or received any personal observations of the driver or specific indications of intoxication." ***Id.*** at 21-22. Appellant also posits that "Trooper Smith had no manner of determining if the passenger and driver switched seats on Claghorn Road when the vehicle was stopped." ***Id.*** at 22. He concludes that the only fact reported by Mr. Reed that Trooper Smith could corroborate—Appellant's presence on Claghorn Road—was not

sufficient to establish reasonable suspicion to justify the traffic stop. *Id.* at 23.

Appellant also assails the suppression court's conclusion that Mr. Reed was credible. *Id.* at 24. He claims that because Mr. Reed did not appear at Appellant's preliminary hearing, provided police with an address different from his current address, has a different phone number than he did in 2019, and because detectives from the District Attorney's office had to search for Mr. Reed in order for him to testify at the suppression hearing, "[t]here is a distinct possibility that Mr. Reed did not intend to furnish the police with a reliable number and current home address." *Id.* at 24, 26. Last, Appellant argues that Mr. Reed's tip was not credible because Mr. Reed's testimony at the suppression hearing described his observation of a "road rage incident" but the PSP dispatch report to Trooper Smith lacked this "seemingly pertinent information" and because Trooper Smith located Appellant on Claghorn Road and not Longs Road. *Id.* at 25.

The law of this Commonwealth provides that "a police officer may stop a vehicle if he or she has reasonable suspicion to believe that the occupants were involved in criminal activity." ***Commonwealth v. Sands***, 887 A.2d 261, 269 (Pa. Super. 2005). "The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." ***Commonwealth v. Holmes***, 14 A.3d 89, 96 (Pa. 2011). As such, "[i]t is the duty of the suppression court to independently

evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot." *Id.*

When considering the totality of the circumstances to determine whether reasonable suspicion exists, it is important to "note that police officers need not personally observe the illegal or suspicious conduct which led them to believe that criminal activity [was] afoot." *Commonwealth v. Wright*, 672 A.2d 826, 830 (Pa. Super. 1996). Instead, officers "may rely upon the information of third parties, including 'tips' from citizens." *Commonwealth v. Lohr*, 715 A.2d 459, 461 (Pa. Super. 1998).

Furthermore, "courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention." *Holmes*, 14 A.3d at 95 (citing *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999)). Importantly, "reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further." *Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa. Super. 2014) (quoting *Commonwealth v. Rogers*, 849 A.2d 1185, 1190 (Pa. 2004)). Instead, "it requires a suspicion of criminal conduct that is reasonable based upon the facts of the matter[,]" and "[p]otential innocent explanations for [a defendant's] conduct do not negate the reasonableness of [an officer's]

- 10 -

suspicion of criminal activity[.]" *Id.* (quoting *Rogers*, 849 A.2d at 1190) (emphasis omitted).

We presume that identified citizens who report their observations of criminal activity to police are trustworthy. *Commonwealth v. Barber*, 889 A.2d 587, 593. (Pa. Super. 2005). Nevertheless, "[w]hen an identified third party provides information to the police, [the court] must examine the specificity and reliability of the information provided." *Commonwealth v. Korenkiewicz*, 743 A.2d 958, 964 (Pa. Super. 1999). In such cases, "[t]he information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring." *Id.* Accordingly, in order "[t]o determine whether the information provided is sufficient, we assess the information under the totality of the circumstances." *Id.* "The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis." *Id.*

Appellant asserts that the suppression court erred in finding that Mr. Reed's tip to the PSP dispatcher was credible and specific enough to support Trooper Smith's reasonable suspicion. Based on our review, we disagree. Mr. Reed testified extensively and in detail about the basis of his knowledge of Appellant's erratic driving, explained the discrepancies between his observations on the night in question and the PSP report received by Trooper Smith, and explained the reason that the Commonwealth did not have his current address and phone number. Appellant essentially asks this Court to make its own determination as to Mr. Reed's credibility, which, as noted

above, we cannot and will not do. **See Camacho**, 625 A.2d at 1245. In addition, Mr. Reed's tip to the PSP dispatcher providing a detailed description of Appellant's vehicle as an older-model, square-body, white, lifted, Ford pick-up truck with marker lights and white vinyl decals on the rear windshield proved reliable when Trooper Smith found the vehicle in the location described by Mr. Reed.

Following our review, we conclude that the record supports the suppression court's findings of fact, and the trial court properly denied Appellant's motion to suppress. The totality of the evidence presented at the suppression hearing, namely Mr. Reed's detailed account of Appellant's erratic driving and accurate description of Appellant's vehicle and its location, coupled with the reasonable inferences of intoxication Trooper Smith drew from the facts in light of his experience, were sufficient to justify Officer Smith's reasonable suspicion that Appellant was engaging in criminal activity. Appellant's claim, thus, fails.[12]

Judgment of Sentence affirmed.

---

[12] In light of our conclusion that Trooper Smith had reasonable suspicion to conduct the traffic stop, we need not address Appellant's alternate argument that Trooper Smith lacked probable cause to conduct the traffic stop because Trooper Smith did not personally observe Appellant violate Sections 3309 and 3714 of the Motor Vehicle Code.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   10/24/2022