J-S49034-14

2014 PA Super 234

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| NATHANIEL DAVIS | |
| Appellee | No. 3549 EDA 2013 |

Appeal from the Order entered November 15, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000231-2013

BEFORE:  OLSON, OTT, and STABILE, JJ.

OPINION BY STABILE, J.:                     **FILED OCTOBER 14, 2014**

The Commonwealth appeals from an order granting a motion to suppress a handgun.  A police officer discovered the handgun during a **Terry**[1] frisk he conducted of Appellee, Nathaniel Davis, in the middle of the night on a West Philadelphia street.  Because the suppression court erroneously concluded that the officer lacked valid grounds to detain and frisk Appellee, we reverse and remand.

At about 2:00 a.m. on December 22, 2012, Officer Sean Devlin and his partner, Officer Steven Carter, were on routine patrol near 52nd and Arch Streets in Philadelphia.[2]  Officer Devlin knew that the neighborhood was a

---

[1] **Terry v. Ohio**, 392 U.S. 1 (1968).

[2] Unless otherwise noted, we take these facts from the Suppression Court Pa.R.A.P. 1925(a) Opinion, 3/4/14.

high-crime area based on the "100, if not more" arrests he had made for "every type" of crime, including DUIs, drug arrests, firearms violations, and physical assaults. *See* N.T., 11/15/13, at 6. Officer Devlin saw two men standing over a third, who was lying unconscious in the street. He later found out that one of the two men was Appellee. Unsure of what was happening, Officer Devlin pulled over his patrol car, turned on the emergency lights, and got out to investigate.

As the officers approached the trio, Officer Devlin noticed that one of the two men was possibly rummaging through the unconscious man's pockets. He tried to speak to the unconscious individual, who was unable to respond. Officer Devlin thought that the unconscious individual may have been beaten by the other two men, though he saw no visible injuries. *See id.* at 9. He also noticed that an object was weighing down the right breast pocket of Appellee's jacket. Officer Devlin approached appellee and began to pat him down. In response, Appellee attempted to swat away Officer Devlin's hand, and flailed his arms. Officer Devlin immediately recognized the object in the jacket pocket as a firearm, and yelled, "gun!" Officers Devlin and Carter restrained Appellee, and secured the gun, which was a Rossi .357 Magnum. Appellee escaped, but only briefly. After a short foot chase, the officers recaptured Appellee and placed him under arrest. The

Commonwealth later charged Appellee with two violations of the Uniform Firearms Act and resisting arrest.[3]

Appellee moved to suppress the firearm as the fruits of an illegal search. At the hearing on the motion, only Officer Devlin testified. The suppression court stated that Appellee "could have been trying to rob the guy, [but] we didn't see him stab him, kick him, robbing, shooting." *Id.* at 21. The suppression court granted the motion, concluding Officer Devlin lacked probable cause sufficient to "get a warrant from a magistrate or judge." *Id.* at 18-19. This appeal followed.[4]

In its Pa.R.A.P. 1925(a) opinion, the suppression court stated, for the first time, that Officer Devlin lacked reasonable suspicion to perform a *Terry* frisk. Trial Court Rule 1925(a) Opinion, 3/4/14, at 9-10. The suppression court concluded that the Commonwealth failed to present specific, articulable facts to support an investigative detention. It noted that Officer Devlin was unsure whether Appellee had harmed the unconscious man and was rifling through his pockets, or was trying to render aid. The suppression court similarly found that the bulge in Appellee's jacket pocket could not support

_____

[3] 18 Pa.C.S.A. §§ 6106(a)(1) (firearms not to be carried without a license), 6108 (carrying firearms on a public street in Philadelphia), and 5104, respectively.

[4] We have jurisdiction because the Commonwealth certified that the suppression court's order terminates or substantially handicaps its prosecution. *See* Pa.R.A.P. 311(d); *Commonwealth v. James*, 69 A.3d 180, 186 (Pa. 2013).

reasonable suspicion because "a bulge without other evidence of criminal behavior does not give rise to reasonable suspicion." *Id.* at 10 n.4 (citing *Commonwealth v. Maxon*, 798 A.2d 761, 768-69 (Pa. Super. 2002)). The suppression court further found that Officer Devlin observed no weapons and no visible injuries to the unconscious man. *Id.* at 10. Finally, the suppression court found that Appellee's action in pushing away Officer Devlin's hand and evading him was a reasonable response to an unlawful frisk. *Id.* at 12-13.

On appeal, the Commonwealth argues that the suppression court erred as a matter of law in failing to consider the totality of the circumstances known to Officer Devlin. It contends Officer Devlin faced an unusual, potentially dangerous situation deserving of investigation. The Commonwealth argues that the Officer's response was reasonable, and designed to ensure his and his partner's safety. Appellant's Brief at 8.

In appeals from orders granting suppression, our scope of review is limited to the evidence presented at the suppression hearing. *In the Interest of L.J.*, 79 A.3d 1073, 1088-89 (Pa. 2013). Thus, we may consider only the evidence from the appellee's witnesses together with the Commonwealth's evidence that, when read in context of the record at the suppression hearing, remains uncontradicted.[5] *Id.*; *Commonwealth v.*

_____

[5] Our Supreme Court in *L.J.* clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented
*(Footnote Continued Next Page)*

- 4 -

***Whitlock***, 69 A.3d 635, 637 (Pa. Super. 2013). As for the standard of review, we apply no deference to the suppression court's legal conclusions. ***Whitlock***, 69 A.3d at 637. In contrast, we defer to the suppression court's findings of fact, "because it is the fact-finder's sole prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony." ***Id.***

Preliminarily, Appellee was not subject to an investigative detention when Officer Devlin stopped his patrol car, turned on the emergency lights, and got out to check on the condition of the man lying in the street. Rather, the interaction at that point was a mere encounter, and mere encounters do not implicate constitutional prohibitions against unreasonable searches and seizures. ***Cf. Commonwealth v. Coleman***, 19 A.3d 1111, 1116-17 (Pa. Super. 2011) (holding that police officers' approaching defendant on street and asking questions was mere encounter).

Officer Devlin's action in patting down Appellee's jacket was a ***Terry*** frisk. A ***Terry*** frisk is a type of investigative detention requiring reasonable suspicion "that criminal activity is afoot and that 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.'" ***Commonwealth v. Guess***, 53 A.3d 895, 901 (Pa. Super. 2012) (quoting ***Terry***, 392 U.S. at 24). The purpose

*(Footnote Continued)* —————————

at the suppression hearing. The suppression hearing in this case post-dates ***L.J.***, so ***L.J.*** is applicable here.

of a **Terry** frisk is not to discover evidence of a crime, but to protect the police officer conducting the investigation. **Id.**; **see also Commonwealth v. Scarborough**, 89 A.3d 679, 683 (Pa. Super. 2014).

The reasonable suspicion necessary to conduct a **Terry** frisk and, in fact, all investigative detentions

> is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

**Commonwealth v. Fell**, 901 A.2d 542, 545 (Pa. Super. 2006) (quoting **Alabama v. White**, 496 U.S. 325, 330 (1990)).

"The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." **Commonwealth v. Holmes**, 14 A.3d 89, 96 (Pa. 2011). In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience. **Id.** at 95. "Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Commonwealth v. Rogers**, 849 A.2d 1185, 1189 (Pa. 2004) (internal quotation and alteration omitted); **see also Scarborough**, 89 A.3d at 684

(holding that the "single factor of the defendant keeping his hand in his pocket after being asked to remove it" constituted reasonable suspicion to stop and frisk).

Turning to the facts of this case, at 2:00 a.m. in a high-crime area, Officer Devlin and his partner happened upon Appellee and another individual standing over an unconscious man in the middle of the street. Officer Devlin was concerned that the two men may have beaten up or robbed the third man, and they may have been going through his pockets. Officer Devlin noticed an object weighing down Appellee's jacket pocket, and began to pat down Appellee for safety. He immediately recognized that the object was a gun, restrained Appellee, and took him into custody.

We hold the trial court erred as a matter of law in granting the suppression motion. The trial court failed to consider the totality of the circumstances, and give Officer Devlin the benefit of the inferences he drew from those circumstances. The record shows that Officer Devlin reasonably suspected that criminal activity was afoot and that Appellee was armed and potentially dangerous.

The incident ending in Appellee's arrest did not occur in a vacuum, and the facts of the incident did not occur in isolation. Yet, that is how the suppression court evaluated the incident and facts. Officer Devlin may have been unsure whether Appellee had assaulted or robbed the unconscious man. It could be, as the trial court proposed, that Appellee was merely a Good Samaritan stopping to render aid. *See* N.T., 11/15/13, at 21. It is

- 7 -

possible that the unconscious man suffered a medical emergency, or had been waylaid by someone else. Further, the item weighing down Appellee's right breast pocket could have been a book. "Of course, one can conceive of innocent explanations for each one of these facts." **Rogers**, 849 A.2d at 1190. "Yet, . . . reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further. Rather, the test is what it purports to be—it requires a *suspicion* of criminal conduct that is reasonable based upon the facts of the matter." **Id.** (emphasis in original). Potential innocent explanations for Appellee's conduct do not negate the reasonableness of Officer Devlin's suspicion of criminal activity, which even the suppression conceded as valid. **See** N.T., 11/5/13, at 21 ("We also know he could have been trying to rob the guy . . . .").

The suppression court erred as a matter of law in granting Appellee's suppression motion. Under the totality of the circumstances, Officer Devlin reasonably suspected criminal activity and that Appellee was armed and potentially dangerous. His patting down of Appellee's jacket leading to the discovery of the firearm was not an unconstitutional search or seizure. Accordingly, we reverse the suppression court's order and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/14/2014</u>