J-S02024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TOSHA VERNEE GRAYS | |
| Appellant | No. 711 EDA 2016 |

Appeal from the Judgment of Sentence Entered February 23, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0002225-2015

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 23, 2017**

Appellant Tosha Vernee Grays appeals from the February 23, 2016 judgment of sentence entered in the Court of Common Pleas of Lehigh County ("trial court"), following her bench conviction for possession of a controlled substance.[1]  Upon review, we affirm.

On August 25, 2015, following her arrest for possession of a controlled substance (narcotic analgesics), Appellant filed a motion to suppress, claiming that Officer John Leonard III of the Allentown Police Department violated her rights under the Pennsylvania and United States Constitutions by stopping and frisking her without reasonable suspicion.  On October 14,

_____

[1] 35 P.S. § 780-113(a)(16).

2015, the trial court held a hearing on Appellant's suppression motion, at which the Commonwealth offered the testimony of Officer Leonard.

Officer Leonard testified that, on November 8, 2014, he was in a marked police vehicle patrolling the 400 block of Liberty Street in Allentown "because of recent shooting, [and] high-level drug activity[.]" N.T. Suppression, 10/14/15, at 7. At approximately 3:52 p.m. on that day, he observed Appellant walking east on Liberty Street. *Id.* at 4-8. He testified that he knew her from a previous incident on August 12, 2014, where "[Appellant] was a witness to a domestic assault between her sister and her nephew." *Id.* at 6. Upon recognizing Appellant, Officer Leonard testified that he exited his patrol vehicle and approached her to ask how she and her family were doing. *Id.* at 8. Officer Leonard further testified that Appellant stopped and spoke to him. *Id.* He described the conversation as friendly. *Id.* Officer Leonard testified that, during the conversation, Appellant was "reaching into her [right jacket] pocket[2] and she was visibly shaking." *Id.* at 8-9. She appeared to be readjusting something. *Id.* at 10. Officer Leonard explained that he observed the shaking because Appellant "was holding a cup of coffee in her one hand." *Id.* at 9. Based on his observations, Officer Leonard concluded that Appellant appeared nervous. *Id.* Consequently, Officer Leonard asked her whether she was carrying any

---

[2] Appellant was wearing a zippered fleece jacket. N.T. Suppression, 10/14/15, at 16.

firearms on her person. *Id.* According to Officer Leonard, Appellant was unresponsive, became "very pale" and "just took a step back." *Id.* at 9-10. She then asked "[w]hat is this?" and "[w]hy are you asking me that?" *Id.*

Officer Leonard further testified that he instructed Appellant to remove her hand from the pocket. *Id.* He explained that after Appellant failed to comply with his command, "I grabbed that arm, that—the hand was in the pocket. While I grabbed it, I felt something hard, and it was—simultaneously, I looked down and I was able to see, without manipulating that outermost garment, that there was white pills in there." *Id.* 10-11 ("When I grabbed her hand, I felt with my fingers what felt like something hard, like a pill, and when I looked down that's what I saw, I saw a couple white pills."). Officer Leonard testified that he grabbed Appellant's hand "[b]ecause [he] didn't know what was in the pocket." *Id.* at 11. According to his testimony, Appellant's hand "was like half in, half out" when he grabbed it. *Id.* Upon Officer Leonard's discovery of the pills, Appellant remarked that they were her mother's Percocet pills. *Id.* Officer Leonard testified that Appellant did not have a prescription for them. *Id.* at 12. Officer Leonard clarified that when he first encountered Appellant, her hand was not in her pocket. *Id.* at 10. Officer Leonard further clarified that he ordered Appellant to remove her hands from the pocket because he feared for his safety. *Id.* at 13. He explained "[b]ecause we were on a directed patrol because there's recent shootings in the area and because I was

encountered with this individual before at an incident that involved a firearm that was never located by the police, it was just very—I was nervous." *Id.*

On cross-examination, Officer Leonard acknowledged that he initiated the encounter with Appellant by saying "hello" to her. *Id.* at 15. He conceded that at the time of the August 12, 2014 domestic dispute incident, Appellant was not believed to have possessed any firearms as she was only a witness. *Id.* In fact, Officer Leonard acknowledged that the firearm in question was imputed to Appellant's nephew. *Id.* He also acknowledged that Appellant put her hand in her jacket pocket only once before he grabbed the hand. *Id.* at 17.

On December 10, 2015, the trial court denied Appellant's motion to suppress the pills. In so doing, the trial court concluded:

> Prior to Officer Leonard grabbing [Appellant's] hand, this interaction was a mere encounter, requiring no level of suspicion on the part of the police. It was only after [Appellant] refused to remove her hand from her pocket that the interaction rose to the level of an investigatory detention, which was supported by reasonable suspicion. [Appellant] was in an area where numerous shootings and drug activity had recently occurred; she was exhibiting nervous and evasive behavior; and she refused to remove her hand from her pocket despite [Officer] Leonard's instructions to remove it. Under the totality of the circumstances, . . . Officer Leonard possessed reasonable suspicion that [Appellant] might be armed and dangerous and was justified in frisking [Appellant]. . . . As such, suppression is not warranted.

Trial Court Order, 12/10/15, at n.1. The case proceeded to a non-jury trial, following which, on January 21, 2016, the trial court found Appellant guilty of possession of a controlled substance. On February 23, 2016, the trial

court sentenced Appellant to one year of probation. Appellant timely appealed to this Court.

On appeal, Appellant raises only a single issue for our review:

[I.] Whether the [trial court] erred by denying [Appellant's] suppression motion by determining that the officer, in stopping [Appellant], had reasonable suspicion that criminal activity was afoot or that [Appellant] might be a danger and was therefore permitted to grab [Appellant] and search her for contraband?

Appellant's Brief at 7.

In reviewing appeals from an order denying suppression, our standard of review is limited to determining

whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct. When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the [trial] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Griffin**, 116 A.3d 1139, 1142 (Pa. Super. 2015). Our scope of review is limited to the evidence presented at the suppression hearing. **In the interest of L.J.**, 79 A.3d 1073, 1088-89 (Pa. 2013).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect the people from unreasonable searches and seizures. **Commonwealth v. Lyles**, 97 A.3d 298, 302 (Pa. 2014) (citation omitted). The **Lyles** Court explained:

Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop and respond. The second, an "investigatory detention," permits the temporary detention of an individual if supported by reasonable

- 5 -

suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

> In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. . . . The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and [our Supreme] Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

> [Our Supreme] Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification. Officers may request identification or question an individual so long as the officers do not convey a message that compliance with their requests is required. Although police may request a person's identification, such individual still maintains the right to ignore the police and go about his business.

*Id.* at 302-03 (internal citations and quotation marks omitted). Instantly, Appellant asserts, and the Commonwealth agrees, that Officer Leonard's interaction with her began as a mere encounter, which escalated to an investigative detention when Officer Leonard grabbed her hand. Appellant, however, challenges Officer Leonard's reasonable suspicion to conduct the investigative detention under ***Terry v. Ohio***, 392 U.S. 1 (1968).

It is settled that reasonable suspicion necessary for investigative detentions

> is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa. Super. 2014) (citations omitted). "In order to justify an investigative detention, the police must have reasonable suspicion that criminal activity is afoot. Reasonable suspicion must be based on specific and articulable facts, and it must be assessed based upon the totality of the circumstances viewed through the eyes of a trained police officer." *Commonwealth v. Williams*, 980 A.2d 667, 672 (Pa. Super. 2009) (citation omitted), *appeal denied*, 990 A.2d 730 (Pa. 2010); *see Commonwealth v. Reppert*, 814 A.2d 1196, 1203 (Pa. Super. 2002) (noting that prior to subjecting citizens to an investigatory detention, the police "must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity"). Thus, "[t]he determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an *objective* one, which must be considered in light of the totality of the circumstances." *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011) (emphasis added); *see Reppert*, 814 A.2d at 1204 (noting that the officer who stops an individual must have "a particularized and objective basis for suspecting the individual stopped").

In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience. *Id.* at 95. Reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further. *Davis*, 102 A.3d at 1000 (citations omitted). "Rather,

the test is what it purports to be—it requires a suspicion of criminal conduct that is reasonable based upon facts of the matter." *Id.* (citation and emphasis omitted). Thus, an officer's "hunch or unparticularized suspicion" does not satisfy the objective reasonable suspicion standard required for investigative detentions. *Reppert*, 814 A.2d at 1204. We remain cognizant that police officers' "judgment is necessarily colored by his or her primary involvement in the 'the often competitive enterprise of ferreting out crime.'" *Id.*

Here, based on the totality of the circumstances and our review of the record, we agree with the trial court's conclusion that Officer Leonard had reasonable suspicion that criminal activity was afoot and that Appellant was engaged in such activity when he grabbed her hand. As recited, Officer Leonard initiated the encounter with Appellant to inquire about her and her family's wellbeing. As he was talking with Appellant, who held a cup of coffee in one hand, he noticed that her other hand was in her jacket pocket and that she was readjusting something. According to Officer Leonard, Appellant was shaking and appeared nervous. Officer Leonard then asked her whether she was carrying a firearm. Appellant did not respond. She became pale and took a step back. She then questioned Officer Leonard why he was asking her that. Officer Leonard instructed her to remove her hand from the pocket. Appellant failed to comply. As a result, Officer Leonard grabbed her hand—a fact both parties agree constituted an investigatory detention. Given our objective standard for reasonable

suspicion, Officer Leonard reasonably believed that Appellant could have been armed when she refused to comply with his command to remove her hand from the pocket wherein she was readjusting something. The reasonableness of Officer Leonard's suspicion also was bolstered by the fact that Appellant "was in an area where numerous shootings and drug activity had recently occurred." Trial Court Order, 12/10/15, at n.1. Accordingly, we hold that the trial court did not err in denying Appellant's motion to suppress the pills.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2017