J-S13014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| VINCENT WALKER, | |
| Appellant | No. 992 MDA 2019 |

Appeal from the Judgment of Sentence May 31, 2019
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002005-2018

BEFORE:  STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:              **FILED AUGUST 11, 2020**

Appellant, Vincent Walker, appeals from his judgment of sentence of 66 months' to 15 years' imprisonment for persons not to possess firearms and carrying a firearm without a license.[1]  Appellant argues that the trial court erred by denying his motion to suppress because the two arresting officers lacked reasonable suspicion to stop and search him.  We affirm.

The trial court accurately summarized the evidence adduced during the suppression hearing as follows:

> The only witness called was Officer Tyler Auerbeck of the Harrisburg Police Bureau.  Office Auerbeck testified that on March 30, 2018, he was dispatched to 346 South 14th Street in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105 and 6106, respectively.

Harrisburg.[2] A caller, Casey Miller, had stated that there were multiple males in that area fighting and throwing liquor bottles and rocks. Officer Auerbeck did not speak to Ms. Miller herself; rather, he received the information from a dispatcher. Officer Auerbeck and Officer Pucciarello (who drove separately in response to the call) both arrived in police vehicles and parked in the area of 14th and Swatara Streets with only their headlights on. Officer Auerbeck observed five or six males congregating in the area and, as soon as he and Officer Pucciarello pulled up, the men started to disburse in separate directions.

When asked about the area, Officer Auerbeck testified that it was a residential neighborhood, and he had responded numerous times in the past to the same location for calls involving drugs, weapons, firearms, assaults, and robberies. He confirmed that it was a high-crime area. When Officer Auerbeck got out of his car, he started walking towards the intersection at 14th and Swatara Streets with Office Pucciarello walking behind him. When Officer Auerbeck first noticed [Appellant], he was walking in the officers' direction. At that time, [Appellant] was about fifteen (15) feet away and Officer Auerbeck said to him, "hey look—got to talk to you real quick." [Appellant] responded by putting his head down, turning away from the officers, and put his hands in his front pockets. At that point, both officers told [Appellant] to "show us your hands; talk to us." Officer Auerbeck testified that they wanted to talk to [Appellant] about the call he received about the fighting and rock-throwing, as he typically gets calls in that area to investigate disorderly conduct of a fighting nature. Next, Officer Auerbeck again asked [Appellant] to stop, and informed him that it is an investigation. [Appellant] continued to walk, and the officer asked him to stop again. At this point, [Appellant was] approximately five (5) feet away, and he walked past the officers. He was wearing a hoodie, his hands were still in his pockets, and he quickened his pace. Officer Auerbeck was not sure if [Appellant] had a weapon on him, but was concerned about [Appellant]'s movements, as he continued walking and did not stop.

---

[2] The suppression hearing transcript reflects that the dispatch took place at approximately 1:40 a.m., and that Officer Auerbeck was a couple of blocks away from the scene when he received the dispatch.

- 2 -

Eventually [Appellant] took off running, and Officer Auerbeck engaged in a short foot pursuit. Officer Auerbeck gained control of [Appellant] by grabbing his back and left arm and eventually pinning him; Officer Pucciarello assisted Officer Auerbeck in taking [Appellant] to the ground. The officers struggled to get to his hands, as [Appellant] kept pulling away; eventually he was apprehended and cuffed. [Appellant] was searched by the officers for contraband. Numerous rocks were found in his hooded jacket/jeans pocket, along with a small baggie of marijuana and a silver H&R caliber revolver pistol. The revolver was loaded.

On cross-examination, Officer Auerbeck established that the only description that he received from dispatch was that that the individuals involved in the disturbance were possibly dark-skinned, and there was no description of clothing. It was also confirmed that Officer Auerbeck was not able to make contact with Ms. Miller, the woman who made the call complaining of the disturbance.

Trial Court Opinion, 8/30/19, at 1-3.

After the trial court denied Appellant's motion to suppress, he proceeded to a bench trial and was convicted of the aforementioned firearms offenses. The court imposed sentence on the same day, and this timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises a single issue in this appeal:

Whether the trial court erred in failing to suppress evidence, including the firearm found in Appellant's possession, where Appellant was seized by police without reasonable suspicion and subsequently searched in violation of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

Appellant's Brief at 5.

When addressing an appeal from the trial court's denial of a motion to suppress evidence:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect the people from unreasonable searches and seizures. *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014). *Lyles* explained:

Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop and respond. The second, an "investigatory detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

*Id.* Since there is no dispute that the arresting officers in this case conducted an investigatory detention, we focus our attention on the standards for reasonable suspicion.

Police may briefly detain a person for an investigatory detention if they have an objectively reasonable suspicion that crime is afoot. *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011). Reasonable suspicion

> is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa. Super. 2014). "Reasonable suspicion must be based on specific and articulable facts, and it must be assessed based upon the totality of the circumstances viewed through the eyes of a trained police officer." *Commonwealth v. Williams*, 980 A.2d 667, 672 (Pa. Super. 2009). The totality of the circumstances element does not permit "divide and conquer" analysis in which the officer examines each individual factor in isolation. *Commonwealth v. Carter*, 105 A.3d 765, 772 (Pa. Super. 2014). Facts that may appear innocent in isolation may, when viewed together, warrant further investigation in the eyes of a trained officer. *Id.* Courts "must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience." *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011). Reasonable suspicion does not require that the activity in question be unquestionably criminal before an officer may investigate further. *Davis*, 102 A.3d at 1000.

Federal jurisprudence sets forth the reasonableness standard for Article I, Section 8 of the Pennsylvania Constitution. ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010). "Both constitutions provide equivalent protections for purposes of an investigative detention analysis." ***Id.***

Viewed together, multiple facts gave the officers reasonable suspicion to detain Appellant for an investigatory detention. The police received a report at nighttime from an identified caller, Casey Miller, that multiple males at 346 South 14th Street were fighting and throwing rocks and bottles. The fact that a disclosed caller gave the tip enhanced its reliability, because a disclosed caller places herself at risk of prosecution for filing a false claim if the tip is untrue, whereas an anonymous source faces no such risk. ***See, Commonwealth v. Barber***, 889 A.2d 587, 593 (Pa. Super. 2005); ***see also United States v. Vandergroen***, —F.3d—, 2020 WL 3737376, *3 (9th Cir., July 7, 2020) (bar employee who provided tip to police that he saw man with gun in the bar was "undoubtedly reliable," where informant "provided his name and employment position, making him a known, and therefore more reliable, witness"). Officer Auerbeck was several blocks away when he received a radio dispatch about the incident, and he drove to the scene, which was a high-crime area. Officer Pucciarello drove to the scene as well in a separate patrol vehicle. Upon their arrival, the officers observed five or six males congregating at the scene, a fact consistent with Miller's tip, who dispersed upon the officers' arrival. As the officers walked towards the

intersection, Appellant walked towards them, and Officer Auerbeck said, "hey look—got to talk to you real quick." Instead of stopping, Appellant reacted suspiciously by putting his head down, turning away, and placing his hands in his pockets. Both officers directed Appellant to "show us your hands [and] talk to us," but he quickened his pace and walked past the officers with his hands in his pockets. He then began running, and the officers apprehended him after a struggle. In short, the tip from a disclosed caller, the officers' observations at the scene consistent with this tip, the high-crime nature of this location, and Appellant's nervous and evasive behavior collectively created reasonable suspicion that criminal activity was afoot. ***Commonwealth v. McCoy***, 154 A.3d 813, 819 (Pa. Super. 2017) (defendant's evasive and suspicious behavior in a high crime area on a particularly cold winter night, along with his unprovoked flight, gave officers reasonable suspicion that criminal activity was afoot, justifying investigatory stop); ***Commonwealth v. Washington***, 51 A.3d 895, 898 (Pa. Super. 2012) ("nervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence").

For these reasons, the trial court properly denied Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/11/2020