J-S58022-19

2020 PA Super 19

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD ALLEN POWELL | : | No. 398 WDA 2019 |

Appeal from the Order Entered February 12, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001829-2018

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

OPINION BY BENDER, P.J.E.:                    **FILED FEBRUARY 3, 2020**

The Commonwealth appeals from the trial court's February 12, 2019 order granting the motion to suppress filed by Appellee, Ronald Allen Powell. The Commonwealth contends that the court erred by concluding that Powell was subject to an investigative detention, rather than a mere encounter, and by suppressing evidence of Powell's intoxication, which led to his being charged with driving under the influence of alcohol (DUI). After careful review, we affirm.

On May 23, 2018, Powell was charged with two counts of DUI under 75 Pa.C.S. § 3802(a)(1) (general impairment) and 75 Pa.C.S. § 3802(c) (highest rate of alcohol). Prior to trial, he filed a motion to suppress the evidence obtained during what he argued was an illegal investigative detention. On January 25, 2019, the court conducted a hearing on Powell's motion, and on

February 12, 2019, the court issued an order granting it. In the court's opinion

accompanying that order, it set forth the following findings of facts:

1. On April 27, 2018[,] Edinboro Police Officer William Winkler was on duty in an unmarked police car along with a [s]heriff's [d]eputy. Both men were in uniform.

2. At approximately 11:37 p.m., Officer Winkler noticed a truck parked in the small public parking lot of the Lakeside Commons shopping mall.

3[.] There were no stores open at this time. The truck's engine was running, and the truck was parked perpendicular to the parking lines.

4. There were no other vehicles in the lot.

5. Officer Winkler testified that he normally patrols the lot, and has observed criminal activity in the lot such as drinking, drugs[,] and lewdness.

6. Officer Winkler pulled his vehicle directly behind the passenger side of the truck. He did not activate his lights.

7. Officer Winkler and the deputy exited their vehicle and approached [Powell's] driver side and passenger side windows respectively.

8. Prior to approaching the vehicle, Officer Winkler had not received any complaints about [Powell's] vehicle, nor had he observed any bad driving or suspicious behavior.

9. When Officer Winkler and the deputy walked up to [Powell's] windows, the windows were closed. Officer Winkler … observe[d] [Powell] in the truck eating food from the Taco Bell restaurant, which is located nearby.

10. Officer Winkler then ordered [Powell] to roll his window down.

11. Officer Winkler observed that [Powell] had glassy eyes and [the officer] smelled a strong smell of alcohol. Officer Winkler asked [Powell] for identification.

12. Officer Winkler thereafter conducted sobriety tests, which [Powell] failed. He was then arrested for DUI.

13[.] Officer Winkler testified that he pulled behind the truck because it was "suspicious" to him based upon the time (11:30 p.m.) and the vehicle being in the parking lot.

14. Officer Winkler has observed people eating in their vehicles in the parking lot before.

Trial Court Opinion (TCO), 2/12/19, at 1-2 (unnumbered).

Based on these findings of fact, the court concluded that Officer Winkler's interaction with Powell became an investigative detention when the officer ordered Powell to roll down his window, and that the detention was not supported by reasonable suspicion. *See id.* at 3-4 (unnumbered). Consequently, the court entered an order granting Powell's motion to suppress the evidence discovered after his illegal detention. *Id.* at 4.

The Commonwealth filed a timely notice of appeal, certifying under Pa.R.A.P. 311(d) that the court's order substantially handicaps the prosecution of Appellant's case. On March 11, 2019, the court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Notably, there is no indication on the docket, or in the certified record, that the Commonwealth filed a concise statement. It also did not attach a copy of its Rule 1925(b) statement to its appellate brief. *See* Pa.R.A.P. 2111(a)(11) (requiring the appellant to attach to the brief "a copy of the statement of errors complained of on appeal, filed with the trial court pursuant to Pa.R.A.P. 1925(b)"). However, we observe that the trial court's order directing the Commonwealth to file a concise statement did not inform the Commonwealth that any issue not properly included in a timely-filed statement will be deemed waived. *See* Pa.R.A.P. 1925(b)(3)(iv). Therefore,

- 3 -

we will not consider the Commonwealth's appellate issues waived due to its failure to file a Rule 1925(b) statement. *See Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[;] … therefore, we look first to the language of that order.").

Herein, the Commonwealth states two issues for our review:

A. Whether the [trial] court erred as a matter of law by finding that Officer Winkler's initial encounter with [Powell] rose to the level of an investigative detention, rather than a mere encounter, and consequently suppressed all evidence obtained as a result of that encounter?

B. Whether the [trial] court abused its discretion by finding that Officer Winkler's initial encounter with [Powell] rose to the level of an investigative detention, rather than a mere encounter, and consequently suppressed all evidence obtained as a result of that encounter?

Commonwealth's Brief at 5.

In addressing the Commonwealth's issues, we are mindful that,

[i]n appeals from orders granting suppression, our scope of review is limited to the evidence presented at the suppression hearing. Thus, we may consider only the evidence from the appellee's witnesses together with the Commonwealth's evidence that, when read in context of the record at the suppression hearing, remains uncontradicted. As for the standard of review, we apply no deference to the suppression court's legal conclusions. In contrast, we defer to the suppression court's findings of fact, because it is the fact-finder's sole prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

- 4 -

*Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa. Super. 2014) (cleaned up).

The Commonwealth combines its two issues into one argument and, therefore, we will also address its two claims together. The Commonwealth contends that the trial court erred by concluding that the interaction between Officer Winkler and Powell amounted to an investigative detention, rather than a mere encounter. Our Supreme Court has explained:

> We have long recognized three types of interactions that occur between law enforcement and private citizens. The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.
>
> No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person.

***Commonwealth v. Adams***, 205 A.3d 1195, 1199–2000 (Pa. 2019) (cleaned up).

In this case, the trial court concluded that Officer Winkler detained Powell, reasoning:

> Here, the [c]ourt finds that neither [Powell] nor a reasonable person would have believed he was free to leave this encounter with the officer. [Powell's] truck was the only vehicle in the parking lot. The police car had pulled up directly behind him. Most significantly, two uniformed law enforcement officers got out of their vehicle and approached his truck on both sides. Once there, Officer Winkler observed him eating. Regardless, Officer Winkler ordered [Powell] to roll down the window. Under these circumstances, a reasonable person would not have believed he was free to leave. Therefore, Officer Winkler, "by means of physical force or a show of authority[,"] restrained [Powell's] freedom of movement.

TCO at 2-3.

The Commonwealth first disagrees with the court's reliance on "the fact that a [s]heriff's deputy approached the passenger[] side of the vehicle at the same time" that Officer Winkler approached Powell's driver-side door. Commonwealth's Brief at 11. The Commonwealth maintains that "there is no evidence of record to indicate that the [s]heriff's deputy engaged with [Powell] or was part of the encounter[,] other than being physically present." ***Id.***

The Commonwealth's argument is not compelling. Although the sheriff's deputy who was with Officer Winkler did not interact with Powell, it is significant that he positioned himself at Powell's passenger-side window as Officer Winkler initiated the interaction with Powell on the driver's side. The

fact that there were two officers present, and that they stood on either side of Powell's vehicle, were appropriate factors for the court to consider, and they support its determination that the encounter was a seizure. **See Commonwealth v. Newsome**, 170 A.3d 1151, 1155 (Pa. Super. 2017) (stating that "the number of officers present during the interaction" and "the officer's demeanor" are factors the court may consider in assessing if a seizure occurred).

The Commonwealth also challenges the court's reliance on the fact that Officer Winkler ordered Powell to roll down his window. According to the Commonwealth,

> [o]nce Officer Winkler parked behind [Powell's] vehicle, without his emergency lights activated, he approached [Powell's] vehicle and knocked on the window so that [Powell] would roll his window down. The Commonwealth disagrees that [Powell] was "ordered" to roll the window down. There is no evidence of record to indicate that Officer Winkler used physical force or authority to have the window rolled down. He had not even spoken to [Powell] at that time. He did not flash a badge or a light in [Powell's] face. Officer Winkler made no indications that the defendant was not free to leave. Rather, the defendant chose to roll down the window and Officer Winkler immediately smelled alcohol, observed [Powell's] slow movement and glossy, red eyes. Therefore, this interaction was a mere counter and no level of suspicion was required for Officer Winkler to engage with the defendant.

Commonwealth's Brief at 12.

Contrary to the Commonwealth's claim, the trial court's factual determination that Officer Winkler ordered Powell to roll down his window was supported by the record. While Officer Winkler initially testified that he "**asked** [Powell] to roll his window down," he later agreed, on cross-

examination, that he "***directed*** [Powell] to lower his window…[.]" N.T. Hearing, 1/25/19, at 11, 24 (emphasis added). The court was free to credit the officer's cross-examination testimony. ***See Davis***, 102 A.3d at 999.

Additionally, we reject the Commonwealth's insistence that Powell "chose to roll down the window[,]" without any expression of authority by Officer Winkler. Commonwealth's Brief at 12. Officer Winkler testified, "I knocked on the window and [] Powell turned slowly and looked at me." N.T. Hearing at 11. The officer then directed Powell to roll his window down. ***Id.*** The officer's testimony indicates that Powell did not immediately move to roll his window down when the officer knocked, but did so only after Officer Winkler directed him to. Therefore, Officer Winkler's command to Powell to lower his window conveyed that Powell was required to talk to the officer, and supports that Powell was seized. ***See Commonwealth v. Luczki***, 212 A.3d 530, 543 (Pa. Super. 2019) ("Officers may request identification or question an individual so long as the officers do not convey a message that compliance with their requests is required.") (quoting ***Commonwealth v. Lyles***, 97 A.3d 298, 303 (Pa. 2014)).

The Commonwealth additionally relies on our Supreme Court's recent decision in ***Adams*** to contend that the interaction between Officer Winkler and Powell was a mere encounter. The pertinent facts of ***Adams*** were summarized by the Court, as follows:

> At approximately 2:56 a.m. on January 10, 2016, during a routine patrol, Officer James Falconio of the Pleasant Hills Police Department observed a white Dodge Dart enter a parking lot that

served two closed businesses – a hobby store and a pizza shop – and drive behind the buildings. Believing that the vehicle may have made a wrong turn, Officer Falconio waited and watched for the vehicle to exit the parking lot. When it did not, the officer drove into the parking lot and behind the buildings to "simply check[] to see why a car drove behind two dark, closed businesses at [three] o'clock in the morning," as he recognized the potential for "drug activity or an attempted burglary."

When he arrived behind the buildings, Officer Falconio observed a white Dodge Dart parked behind the pizza shop. The engine was not running and the vehicle's lights were off. Although there were no "no parking" signs, there were also no marked parking spots. Officer Falconio did not believe that this was an area where the public would generally park, but that the area might be used for deliveries and employee parking.

Officer Falconio pulled behind the vehicle in his marked police cruiser but did not activate his overhead lights or siren. He radioed for backup, but prior to backup arriving, he exited his police cruiser and walked over to the parked vehicle. It was late at night in a poorly lit area, and Officer Falconio utilized his flashlight, shining it into the vehicle as he approached. He reached the driver's side door and knocked on the window, at which time the occupant, Appellant Edward Thomas Adams ("Adams"), opened the car door. Officer Falconio pushed the door closed and instructed Adams to roll down his window. According to Officer Falconio, he did not feel safe allowing Adams, who was "not a short guy," to exit his vehicle without another officer present. Adams explained to the officer that he could not open the window because he did not have the keys to the vehicle. Officer Falconio observed a set of keys (which he believed to be the keys to the vehicle) on the floor of the back of the car. Adams remained in his vehicle until backup arrived, which occurred approximately one minute later.

***Adams***, 205 A.3d at 1197-98 (citations to the record and footnotes omitted).

When backup officers arrived, Adams was questioned and subjected to field sobriety tests, as well as a subsequent blood draw at the hospital, all of which demonstrated that he was intoxicated. ***Id.*** at 1198. Prior to trial, Adams filed a motion to suppress, arguing that he was illegally detained

without reasonable suspicion. *Id.* In denying that motion, the trial court concluded that the interaction between Officer Falcone and Adams was a mere encounter until the point at which the officer detected indicia of intoxication, which provided reasonable suspicion to detain Adams. *Id.* On appeal, this Court affirmed, adopting the trial court's position.

However, our Supreme Court ultimately reversed. Preliminarily, the Court declined to decide whether the encounter "was an investigative detention from the moment the officer exited the police vehicle and approached [Adams'] car." *Id.* at 1200; *id.* at 1200 n.6. This determination was not necessary because the Court

> agree[d] with Adams that he was 'seized' for Fourth Amendment purposes when Officer Falconio would not allow Adams to exit his vehicle, closing the door as Adams opened it. This action, constituting both an act of physical force and a show of authority, is precisely the type of escalatory factor that compels a finding that a seizure occurred. Officer Falconio confined Adams to his vehicle, and no reasonable person in Adams' shoes would have felt free to leave. In fact, under these circumstances, not only would a reasonable person not feel free to leave, Adams actually could not leave his vehicle and "go about his business." *See* [*Florida v.*] *Bostick*, 501 U.S. [429,] 437 [(1991)]…. Moreover, Officer Falconio did not simply request that Adams stay in the car. His action of physically closing the door as Adams was opening it communicated what any reasonable person would understand to be a demand that he remain in the vehicle at that location. *See, cf., Commonwealth v. Au*, … 42 A.3d 1002, 1007 n.3 ([Pa.] 2012) (recognizing that in evaluating whether a person has been seized for Fourth Amendment purposes, "a request obviously differs from a demand"). At that moment, Officer Falconio restrained Adams' freedom to walk away, and thus Adams was "seized" for Fourth Amendment purposes. *See Terry* [*v. Ohio*,] 392 U.S. [1,] 16 [(1968)].

*Id.* at 1200-01.

Instantly, the Commonwealth claims "the crux of the **Adams** case is clearly distinguishable from the facts of the present case. The present case is devoid of any escalatory factors that would indicate [] Powell was seized. Rather, Officer Winkler simply knocked on the vehicle's window." Commonwealth's Brief at 14.

We do not agree. We recognize that, unlike in **Adams**, Officer Winkler did not physically restrain Powell's movement. However, there were other factors in this case that convince us that a reasonable person in Powell's position would not have felt free to leave. Namely, while Powell sat alone in his vehicle, parked legally and eating food from a nearby restaurant, Officer Winkler parked his vehicle "right behind" Powell's car. N.T. Hearing at 10; **see also** N.T. Hearing at 18-21 (Officer Winkler's testifying that Powell was parked legally and he observed nothing criminal about Powell's vehicle before approaching). He and the sheriff's deputy both approached Powell's vehicle and positioned themselves on either side of it. Although Officer Winkler could see that Powell was innocuously eating food, **id.** at 24, he knocked on Powell's window. When Powell looked at him, Officer Winkler ordered Powell to lower his window. In light of the totality of these circumstances, Powell was subjected to an investigative detention at the point of that command.

Finally, we address the Commonwealth's position

> that to suggest that an officer cannot approach a running vehicle and knock on the window in an attempt to facilitate communication, late at night where no businesses are open, where no one else is present in the parking lot, and the officer routinely encounters criminal activity in that area would have a

chilling effect. How many times would officers be prevented from checking on vehicles that have distressed drivers, overdosed persons, or persons engaged in criminal activity?

Commonwealth's Brief at 14.

We by no means intend to dissuade officers from interacting with citizens, especially to check on an individual's welfare. However, it is clear in this case that Officer Winkler did not 'attempt to **facilitate** communication' with Powell but, instead, demanded communication by ordering Powell to lower his window. Moreover, the officer admitted that he observed nothing criminal as he approached Powell's vehicle, and he could see through the window that Powell was eating. **See** N.T. Hearing at 24. Thus, before Officer Winkler knocked on Powell's window and commanded him to lower it, he could see that Powell was not distressed, overdosed, or doing anything outwardly illegal. As such, the Commonwealth's argument that suppressing the evidence in this case will have a 'chilling effect' is meritless.[1]

Order affirmed.

---

[1] The Commonwealth offers no argument that the court erred by concluding that Officer Winkler lacked reasonable suspicion to detain Powell; thus, we do not address that issue herein.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/3/2020