J-A28041-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON JAMES KIFER | : | |
| | : | |
| Appellant | : | No. 1352 WDA 2019 |

Appeal from the Judgment of Sentence Entered August 5, 2019
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0001255-2018

BEFORE: OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: FILED DECEMBER 29, 2020

Brandon James Kifer (Appellant) appeals from his judgment of sentence entered in the Court of Common Pleas of Clearfield County, and from the trial court's pretrial order denying suppression based on Appellant's assertion that the investigating officers lacked reasonable suspicion and probable cause to detain him. He also challenges the weight and sufficiency of the evidence supporting his conviction, and argues that a mistrial should have been granted due to police officer testimony referring to outstanding warrants and police fears that Appellant would not appear at trial, as detailed infra. We reverse the trial court's denial of suppression and vacate the judgment of sentence. Therefore, we need not reach Appellant's claims as to sufficiency and denial of his mistrial motion.

Appellant opted to be tried by a jury, and was convicted at the close of his jury trial of Possession with Intent to Deliver a Controlled Substance (PWID)[1] and Possession of Drug Paraphernalia.[2]

The trial court summarized the facts as follows:

On December 7, 2018, Officers from the Lawrence Township Police Department responded for the purpose of a welfare check at [Walmart] at 1:30 in the afternoon due to the report of someone passed out behind the wheel of a vehicle. When Officers arrived on scene, Officers did not activate their overhead lighting and observed [Appellant's] vehicle parked across two or three parking spaces. Chief Clark pulled his cruiser behind the vehicle while Officer Routch pulled his cruiser near the front of the vehicle approximately one parking spot away to allow [Appellant] to pull away if he chose to do so. At that time, they observed [Appellant] passed out and slumped over the wheel of the vehicle, and, after some time, were able to wake him up.

Upon making contact with [Appellant], Officer Routch observed a very slow, lethargic demeanor and that [Appellant] spoke with a raspy voice and slurred speech. [Appellant] explained that he was just tired; however, when asked why he was tired, [he] indicated that he had just taken a Subutex. At that time, Officer Routch believed that [Appellant] was impaired; therefore, he asked [Appellant] to step out of the vehicle for standardized field sobriety testing. Following sobriety testing which indicated impairment, [Appellant] agreed to go to the Lawrence Township Police Department for an evaluation by a drug recognition expert and was placed into custody on suspicion of driving under the influence of a controlled substance. At that time, a search incident to arrest produced two bags of methamphetamine.

_____

[1] 35 P.S. § 780-113(a)(30) (the substance in question was methamphetamine). Appellant was also convicted of Knowing and Intentional Possession of methamphetamine (K&I) (35 P.S. § 780-113(a)(16)), which is subsumed in the PWID conviction.

[2] 35 P.S. § 780-113(a)(32).

On December 9, 2018[,] the Lawrence Township Police Department filed charges of Driving Under the Influence of a Drug or Combination of Drugs (M1), [PWID](F), [K&I](M)[,] and Use or Possession of Drug Paraphernalia(M) against [Appellant]. The charges were filed as a result of the Police Department coming into contact with [Appellant] in the parking lot of the [Walmart] Supercenter located at 100 Supercenter Drive, Clearfield, Lawrence Township, Pennsylvania, on December 7, 2018. Officers were dispatched to [Walmart] as a result of a complaint being made that a man was misparked and sleeping in his car in the parking lot. The police found [Appellant], and believed that he was impaired. Field sobriety tests were conducted and [Appellant] agreed to see a drug recognition expert at the police station. A pat down search was conducted at which time approximately 61 grams of methamphetamine as well as various drug paraphernalia was found to be in [Appellant's] possession.

[Appellant] was taken before a Magisterial District Judge with cash bail being set, which [Appellant] was unable to post. His preliminary hearing was scheduled for December 19, 2018 where, being represented by counsel, [Appellant waived his preliminary hearing]. Defense counsel [ ] filed a Suppression Motion on March 13, 2019. Hearing on the same was held April 26, 2019 and as a result of the same following the Court's receipt of the parties['] briefs, by this Court's order of July 2, 2019 [Appellant's] Motion to Suppress Evidence was dismissed.

On April 26, 2019, a hearing was held regarding the issues raised in [Appellant's] Motion to Suppress Evidence. [Appellant's] position was that he was detained without reasonable suspicion or probable cause; therefore, all evidence obtained from [Appellant] must be suppressed. However, the Court found that based on the totality of the circumstances the initial contact in this matter was a "mere encounter" and the level of interaction only escalated to an "investigatory detention" upon the Officer's reasonable suspicion that [Appellant] was operating a vehicle under the influence of a controlled substance.

[Appellant's] jury was selected on June 13, 2019 and the trial held on July 20, 2019. The jury found [Appellant] guilty of [PWID, K&I], and Use/Possession of Drug Paraphernalia. [Appellant] was found not guilty of Driving Under the Influence of a Drug or Combination of Drugs. Following the completion of a presentence investigation report [Appellant] was sentenced on

August 5, 2019. On [PWID, an ungraded felony,] he was sentenced to a $1.00 fine, plus costs, and a minimum of [five] years and a maximum of [ten] years in state prison. The [K&I] charge merged and on the Drug Paraphernalia charge he was sentenced to a $1.00 fine, plus costs and a concurrent period of probation.

The Public Defender filed a Notice of Appeal on [Appellant's] behalf on August 29, 2019. The Public Defender's office thereafter withdrew from representation as they indicated [Appellant] would be claiming that their office provided ineffective assistance of counsel. As a result of the Public Defender's withdrawal, Joshua Maines, Esquire, was appointed to represent [Appellant]. An Amended Notice of Appeal was filed on November 22, 2019. Pursuant to this Court's Order, [Appellant's] Statement of Errors Complained of on Appeal was filed on November 21, 2019.

Trial Ct. Op., 12/10/19, at 1-4 (paragraphs rearranged to reflect chronology). Officer Routch testified that he asked Appellant for his identification almost immediately upon rousing Appellant, and that Chief Clark took the identification back to his vehicle to verify that Appellant was not subject to a warrant or otherwise ineligible to drive. N.T. Trial, 7/10/19, at 131-32.

Appellant raises the following arguments: [3]

1. Whether the [trial] court erred by denying Appellant's motion to suppress evidence, where [officers] did not have sufficient cause to conduct an investigative detention.

> 1A. Whether Appellant was seized for an investigatory detention when officers positioned their vehicles to the front and rear of Appellant's vehicle, and both uniformed officers approached Appellant and knocked on the window of his driver's side door.

_____

[3] We omit Appellant's arguments as to sufficiency and his mistrial motion, as we need not reach them.

1B.  Whether officers had reasonable suspicion that criminal activity was afoot at the time officers seized Appellant.

Appellant's Brief at 7.

As to suppression, Appellant argues that police lacked reasonable suspicion that he was engaged in criminal activity when they positioned two police vehicles in front of and behind his vehicle while he slept in a Walmart parking lot.  Appellant's Brief at 20.  Appellant argues that the way police parked indicated to him that he could not leave, and at that time he did not feel free to leave the scene; nor would a reasonable person have felt free to leave under those circumstances.  Id.  He argues that the detention was not supported by sufficient indicia of criminal activity.  Id.  Because the police compounded the initial show of force by pounding on his window and removing him from his car, at no point did he feel free to leave, nor would a reasonable person have felt free to leave.  Id.  Appellant asserts that the police violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.  Id.

The Commonwealth argues that this was initially a mere encounter, and that the police lacked investigatory intent when they responded to the parking lot.  Commonwealth's Brief at 2.  The Commonwealth asserts that Appellant posed a danger to people and property when he was improperly parked and slumped over his steering wheel.  Id.  Likewise, the trial court characterizes the initial stage of the interaction as a mere encounter, consistent with a welfare check.  Trial Ct. Op. at 5.

This Court must determine when Appellant was detained, and whether police were legally justified in detaining him. Appellant argues that he was detained at the moment police approached his vehicle, after parking marked police cars at the front and rear of his vehicle. Appellant's Brief at 26. The Commonwealth asserts that this was a mere encounter, and it did not escalate to an investigatory detention until officers spoke with Appellant and observed indicia of intoxication, giving them reasonable suspicion that he was driving under the influence. Commonwealth's Brief at 9-12.

When our appellate courts review suppression decisions, the trial court's factual findings are binding to the extent they are supported by the record, and its legal conclusions are reviewed de novo. Commonwealth v. Adams, 205 A.3d 1195, 1199 (Pa. 2019), cert. denied sub nom. Pennsylvania v. Adams, 140 S.Ct. 2703 (2020). There are three levels of interaction between peace officers and citizens: mere encounters, investigatory detentions, and arrests, or custodial detentions. Id. at 1199-1200.

Mere encounters need not be supported by any level of suspicion of illegality, but an investigatory detention must be supported by reasonable suspicion of criminal activity. Adams, 205 A.3d at 1200. The line between mere encounters and investigatory detentions is demarcated by an objective test known as the "free to leave" test. Id.; see also Florida v. Bostick, 501 U.S. 429, 434 (1991) ("So long as a reasonable person would feel free 'to disregard the police and go about his business,' . . . the encounter is consensual and no reasonable suspicion is required."); Terry v. Ohio, 392

U.S. 1, 19, n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). The "free to leave" test "requires the court to determine 'whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Adams, 205 A.3d at 1200, quoting Bostick, 501 U.S. at 437.

In Adams, our Supreme Court analyzed a situation in which a police officer, upon approaching a parked car and seeing the occupant open the door, pushed the door closed. Adams, 205 A.3d at 1197. The officer requested that the car's occupant instead open the window, and when the occupant reported that he could not do so, requested that he stay in the car until backup arrived, which it did shortly thereafter. Id. at 1197-98. The Court found that the act of shutting the door was "both an act of physical force and a show of authority" and "precisely the type of escalatory factor that compels a finding that a seizure occurred" – therefore, the Court concluded that "no reasonable person in Adams' shoes would have felt free to leave." Id. at 1201.

In Commonwealth v. Powell, 228 A.3d 1 (Pa. Super. 2020), this Court analyzed a situation wherein two officers in an unmarked car approached an individual in a parked but running truck, parked perpendicular to the painted parking spots. Id. at 2-3. They had parked the unmarked police vehicle directly behind the truck, but had not activated its lights. Id. at 3. As in this

incident, the officers had not observed any driving or other indicia of illegality. Id. The officers approached the truck on both sides. Id. at 5.

The Commonwealth encourages us to distinguish Powell based on the fact that the trial court in Powell ruled in favor of suppression, whereas the trial court here denied suppression.[4] Commonwealth's Brief at 12. This we decline to do, as trial court's factual findings are entitled to our deference, but its legal conclusions are not. Because the facts here are markedly similar to Powell, we must apply it to conclude that the show of force inherent in positioning two marked police cars fore and aft the parked vehicle and approaching from those two cars creates a situation that a reasonable person would not feel able to sidestep, however politely. It is hard to imagine Appellant simply opting out of this interaction and driving away, no matter that there was apparently just enough space for him to do so.[5]

Obviously, a marked car must be considered a more overt show of force than an unmarked car, and two marked cars more than one. Further, parking

_____

[4] The Commonwealth also argues essentially that suppression is inappropriate because Appellant's condition at the time police approached him suggested that he might be in need of assistance, and "a mere encounter should be encouraged for the benefit of the Appellant as well as the general public." Commonwealth's Brief at 11. We note that peace officers can perform wellness checks without collecting evidence for subsequent prosecutions; there is nothing about the enforcement of search and seizure laws that should dissuade any first responder from assisting someone in distress.

[5] Officer Routch testified that he parked one parking spot away from Appellant's truck, to the front of the truck. N.T. Suppression Hrg, 4/26/19, at 27.

them in the fore and aft position strongly suggests that the officers made a conscious choice to surround Appellant. This parking move is analogous to the approach to both the driver's and passenger's side of the vehicle in Powell.

Further, when they approached Appellant's vehicle, the officers asked Appellant for his identification almost immediately upon rousing him and Chief Clark took the identification back to his car, while Officer Routch continued to question Appellant, eventually leading to Routch conducting field sobriety testing. N.T. Trial, 7/10/19, at 131-33; N.T. Suppression Hrg, 4/26/19, at 17-18.[6] Our Supreme Court recently confirmed that under most circumstances, a reasonable person would not feel free to go when a member of law enforcement has their identification. Commonwealth v. Cost, 224 A.3d 641, 651 (Pa. 2020) ("the retention by police of an identification card to conduct a warrant check will generally be a material and substantial escalating

_____

[6] Officer Routch testified that "We had both made contact with [Appellant]. And upon getting his information, we simply asked him if he had any form of identification . . . [h]e willingly gave it to us. Chief Clark took it back to his vehicle, and I began to have conversations with [Appellant] . . . I just asked him why he was tired. He told myself that he had just taken a Subutex." N.T. Suppression Hrg, 4/26/19, at 17-18. At trial, Officer Routch testified that the two officers approached Appellant's car and woke him, and they were then able to "speak with him for a little bit." N.T. Trial, 7/10/19, at 131. "At that time, I did ask him for his identification, which he did hand it to me. I then gave the identification to Chief Clark for him to run while I went back and spoke with [Appellant]." Id. at 131-32. He said he asked Appellant why he was tired, and "[Appellant] had told this officer that he had taken a Subutex." Id. at 133. Officer Routch then asked Appellant to get out of his car so that they could conduct field sobriety testing. Id.

factor within the totality assessment"). Chief Clark walked away from Appellant with Appellant's identification immediately, allowing Officer Routch to continue the conversation in which he elicited that Appellant had taken a Subutex.

Because application of Powell and Cost renders it clear that Appellant was subject to an investigatory detention when police first approached his vehicle or very shortly thereafter, we must determine whether this level of encounter was supportable. Constitutional compliance mandates that police initiating an investigative detention must have a reasonable suspicion, based on objective facts, that the targeted individual is involved in criminal activity. Brown v. Texas, 443 U.S. 47, 51 (1979); Commonwealth v. Strickler, 757 A.2d 884, 889 (Pa. 2000). The courts, following the lead of the United States Supreme Court, have "consistently eschewed bright-line rules in favor of assessment of the totality of the circumstances." See id. at 893. "[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." Commonwealth v. Reppert, 814 A.2d 1196, 1204 (Pa. Super. 2002) (citation omitted).

The Commonwealth cites the following factors in support of the stop: Appellant was parked in a rear Walmart parking lot in a way that transgressed the painted lines demarcating parking spots. Commonwealth's Brief at 6.

Appellant was unconscious and resting on the steering wheel. Id. The officers testified that the vehicle was running, but they did not see Appellant drive or attempt to drive. Id. at 10; Trial Ct. Op. at 3-4.

The Commonwealth acknowledges that "[i]t was only after the officers approached the vehicle and woke up Appellant that they acquired reasonable suspicion that he was Driving Under the Influence . . . ." Commonwealth's Brief at 12. The problem, of course, is that he was already detained by then. He was detained at the point that the police parked him in, though they left one parking spot as a margin, and certainly he was detained when Chief Clark walked away from him, holding his identification. See Cost, 224 A.3d at 651 (police retention of citizen identification for warrant check is substantial escalating factor for totality assessment). All of this happened prior to Appellant's admission that he had taken a medication that causes drowsiness. An anonymous report that someone was "misparked" and sleeping is not sufficient to support an investigatory detention. See, e.g., Commonwealth v. Wimbush, 750 A.2d 807, 812 (Pa. 2000) (anonymous tip alone insufficient for reasonable suspicion that criminal activity was afoot).

The trial court did not have the benefit of our opinion in Powell at the time it performed its suppression analysis, but Powell does not break new ground. It is consistent with Cost and its pragmatic application of the "free to leave" standard. Because we find that the trial court erred in denying suppression, we need not reach Appellant's argument as to sufficiency of the evidence and propriety of denial of his mistrial motion.

July 2, 2019 order denying suppression reversed. Judgment of sentence vacated. Remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/2020